UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

| Present: The Honorable | ANDREW J. GUILFORD | | |
|---|---|---|---|
| Dwayne Roberts | Not Present | | |
| Deputy Clerk | Court Reporter / Recorder | | Tape No. |

Attorneys Present for Plaintiffs:               Attorneys Present for Defendants:

**Proceedings:        [IN CHAMBERS] ORDER RE SANCTIONS AND MOTIONS IN LIMINE**

This case arises from Defendant's use of Plaintiff's copyrighted software in alleged violation of the parties' license agreements. Before the Court is Defendant's motion for terminating sanctions, issue sanctions, and monetary sanctions ("Motion"). Also before the Court are Plaintiff's 12 motions in limine and Defendant's 4 motions in limine. After reviewing the papers and considering the arguments raised at the January 23, 2011 hearing on the Motion, the Court GRANTS in part and DENIES in part the Motion. The parties' motions in limine are also GRANTED in part and DENIED in part.

**BACKGROUND**

Defendant DirecTV Operations, LLC ("DirecTV") is a satellite television provider. Plaintiff Quest Software, Inc. ("Quest") creates and licenses computer systems management software, including a line of software named Foglight ("Foglight" or "Software"). In 2002, the parties signed a Software License Agreement ("SLA") which permitted DirecTV to use Foglight on a specified number of its Windows NT servers.

At some point before 2007, DirecTV migrated its computer system from Windows NT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

servers to AIX servers. Quest alleged that DirecTV violated the SLA during and after this migration by (1) using Foglight on AIX servers, and by (2) "overdeploying" Foglight. Quest further alleged that DirecTV failed to pay "true-up" fees for the overdeployed Software. Quest sued DirecTV in October 2009 asserting claims for copyright infringement and breach of contract. In July 2011, DirecTV filed two Motions for Partial Summary Judgment, which the Court granted in part and denied in part.

Soon after, the parties' discovery disputes began. On September 6, 2011, Magistrate Judge Nakazato granted DirecTV's motion to compel and ordered Quest to produce, among other things, "information about Plaintiff's use of a true-up tool for measuring Foglight's overdeployment by Plaintiff's customers" no later than September 13, 2011. (Dkt. No. 179.)

Quest appealed the ruling to this Court without seeking a stay of the Magistrate Judge's order (the "September Order"). The Court affirmed the September Order on October 24, 2011. On November 7, 2011, nearly two months after the deadline set in the September Order, Quest produced approximately 350,000 documents purportedly responsive to DirecTV's discovery requests.

DirecTV then moved to sanction Quest for violating the September Order. In December 2011, Magistrate Judge Nakazato granted in part DirecTV's first motion for sanctions and ordered Quest and Quest's counsel to pay over $25,000 for failing to comply with the September Order (the "December Sanctions Order"). Magistrate Judge Nakazato also rejected as "frivolous" Quest's argument that information concerning its use of the true-up tool was not relevant to the issues of overdeployment and damages. Quest did not appeal the December Sanctions Order.

Magistrate Judge Nakazato determined that DirecTV's additional requests – for terminating sanctions, issue preclusive sanctions, and further monetary sanctions – should be heard by this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

## LEGAL STANDARD

Federal Rule of Civil Procedure 37 states that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders" including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Rule 37 sanctions "must be both 'just' and specifically related to the particular 'claim' that was at issue in the discovery order." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 695 (1982). "Due process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances.'" *Fjelstad v. Am. Honda Motor Corp.*, 762 F.2d 1334, 1338 (9th Cir. 1985).

## ANALYSIS

The issue now before the Court is not whether Quest complied with the September Order. It did not. (*See* December Sanctions Order at Dkt. No. 179.) Rather, the question the Court must consider is whether the nature of Quest's noncompliance justifies terminating sanctions, issue preclusive sanctions, further monetary sanctions, or a combination of the three. The Court concludes that issue preclusive sanctions preventing Quest from presenting evidence derived from its counting tool and barring Quest from arguing that true-up fees should be calculated using Foglight's "list price" are sufficient to remedy the harm caused by Quest's discovery violations.

## 1.   QUEST'S NONCOMPLIANCE WITH THE SEPTEMBER ORDER

Quest argues that further sanctions are not justified because its discovery efforts, though late, were reasonably diligent. To support this argument, Quest emphasizes the fact that it began *identifying* people and sources likely to have documents responsive to DirecTV's requests almost immediately after Magistrate Judge Nakazato issued the September Order. (Declaration of Michael Hallady supporting Quest's Opposition to DirecTV's Motion ¶¶ 10-11.) But while Quest may have *identified* these people and sources in early September, it waited six weeks before actually *searching* for any documents. As Quest

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|----------|---------------------------|------|-------------------|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

acknowledges, this delay prevented it from effectively reviewing the documents it produced to DirecTV on November 7, 2011.  (Quest's Opposition to DirecTV's Motion ("Opp'n") at 7:14-17.)  Consequently, very few of the documents that Quest produced were responsive to DirecTV's requests, and most of the documents were produced in a native format that DirecTV could not access.  (*Id.* at 7:14-17.)

Quest's inadequate discovery methodology also contributed to its deficient production.  Instead of searching the hard drives of its Foglight sales representatives, Quest simply *requested* that they look for and produce documents responsive to DirecTV's request.  (DirecTV's Reply to Opp'n ("Reply") at 6:27-7:4.)  This approach yielded fewer than 350 documents.  Indeed, even the Quest sales personnel assigned to DirecTV's account denied having information concerning Quest's use of the script tool to count DirecTV's deployment.

To compensate for the inadequate productions from its sales representatives, Quest resorted to Plan B – the mass production of more than 350,000 documents located on a single storage drive in Quest's network sharing area.  As noted, Quest failed to review these documents for relevancy, responsiveness, or accessibility before producing them to DirecTV.  The size of this "data dump" – as DirecTV describes it – is especially troubling because Quest produced fewer than 9,000 files during nearly 18 months of discovery.  (Opp'n at 9:24-27.)  Also troubling is the fact that Quest's November 7, 2011 production contained numerous documents responsive to discovery requests that Quest had previously claimed were complete.

## 2.    SANCTIONS

As noted, Rule 37(b)(2) permits courts to dismiss a case based on discovery violations.  But "[b]efore imposing the harsh sanction of dismissal, the district court must weigh several factors: (1) the public's interest in expeditious resolution of the litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) public policy favoring disposition of cases on their merits; and (5) the availability of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

less drastic sanctions." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) (internal citations omitted). Where, as here, "a court order is violated, factors 1 and 2 support sanctions and 4 cuts against case dispositive sanctions, so 3 and 5, prejudice and availability of less drastic sanctions, are decisive." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 2010).

Quest argues that DirecTV suffered only minimal prejudice because: (1) "DirecTV has not been deprived of documents to support its case"; (2) "DirecTV's experts have sufficient data on which to base their opinions"; and (3) "DirecTV's own pleadings reveal that it possesses evidence sufficient to present a defense of this action." (Opp'n at 18:8-22:10.) Quest's first argument fails because its noncompliance with the September Order prevents the Court from knowing whether, and to what extent, DirecTV has been deprived of documents to support its case. The nature of Quest's noncompliance also strongly suggests that responsive documents remain in Quest's possession.

Quest's second and third arguments are based on the premise that DirecTV has *enough* evidence to present its case. While DirecTV may have "evidence sufficient to present a defense of this action," Quest's discovery violations make it less likely that DirecTV's defense will ultimately succeed.

Although DirecTV has been harmed by Quest's failure to conduct the reasonably diligent search required by the Magistrate Judge's September Order, terminating sanctions are inappropriate for two reasons. First, there is insufficient basis for the Court to conclude – as DirecTV has – that Quest's discovery violations were "deliberate," "calculated," or "in bad faith." (Reply at 6:6-13.) *See, e.g.*, *Anheuser-Busch,* 69 F.3d at 352 (granting terminating sanctions based on a pattern of "deceptive," "willful," and "bad faith" violations of discovery orders). Second, less drastic sanctions are adequate to redress DirecTV's injury.

The information that DirecTV sought, and Quest failed to produce, is most relevant to the true-up tool that Quest used to measure customer deployment. Because Quest's discovery violations deprived DirecTV of evidence necessary to uncover flaws in the tool, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-1232 AG (ANx) | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

will not allow Quest to introduce evidence of DirecTV's overdeployment based on the tool. And because Quest failed to produce documents concerning true-up prices charged to customers based on deployment counts obtained from the tool, the Court also bars DirecTV from arguing that the Foglight "list price" or the historical price paid by DirecTV reflect appropriate damages for unpaid true-up fees.

Accordingly, Court GRANTS DirecTV's request for an "[o]rder barring Quest and its experts from relying directly or indirectly on the June 2007 data from the Quest counting tool to prove the extent of DirecTV's use of Foglight or the resulting damages." (Motion at 6:15-18.) The Court also GRANTS DirecTV's request for an "[o]rder barring Quest from arguing that the full Foglight 'list price' or the 'historical price paid by DirecTV' are appropriate units of damages for true-up fees." (*Id.* at 6:20-22.)

DirecTV's remaining requests for sanctions are DENIED.

**3.     MOTIONS IN LIMINE**

Before the Court are 16 in limine motions and an equal number of oppositions, producing over 250 pages of briefing. The Court first considers Quest's 12 motions in limine before turning to the four in limine motions filed by DirecTV.

### 3.1     Quest's Motions in Limine

The Court GRANTS Quest's eleventh motion in limine, and GRANTS in part and DENIES in part Quest's third motion in limine. The Court DENIES Quest's remaining in limine motions, with leave for Quest to renew some of its objections at trial, as described in this Order.

#### 3.1.1   Quest Motion in Limine 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

Quest's first motion in limine seeks to exclude, under Federal Rule of Evidence 408, "improper evidence regarding settlement offers made by Quest to DirecTV in 2006 and 2008." (Quest MIL 1 at 1, 8-9.) Quest focuses on two sets of communications: (1) communications that occurred in April 2006 and April 2007 between Quest employee Pam Cosper and various DirecTV employees concerning pricing for overdeployed Software, and (2) communications regarding true-up fee quotations between unidentified Quest employees and DirecTV employees that occurred in December 2008.

DirecTV argues, and the Court agrees, that Rule 408 does not bar this evidence because these purported "settlement negotiations" did not relate to any disputed claim. *See* Fed. R. Evid. 408 (prohibiting the use of compromise offers and negotiations "to prove or disprove the validity or amount of a *disputed claim*.") The communications here occurred during the normal course of business *before* the parties' dispute ripened.

The Court DENIES this motion without leave for Quest to renew its objection at trial.

### 3.1.2   Quest Motion in Limine 2

Quest's second in limine motion seeks to prohibit DirecTV from introducing evidence, under Rules 401, 402, and 403, showing that "Quest's 'script' or 'tool' used to assess deployment of Foglight licenses by DirecTV was in any way 'flawed' or faulty." (Quest MIL 2 at 1.)

As explained more fully in Section 2, Quest used a counting tool to collect data on DirecTV's deployment and use of Foglight. DirecTV claims that flaws in the tool resulted in an excessively high deployment count. Quest argues that the tool is not flawed and that the flaws DirecTV describes would not have impacted the accuracy of the deployment count.

Evidence concerning the tool's accuracy is relevant to determining the extent of DirecTV's purported overdeployment. Quest's Motion therefore fails under Rules 401

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-1232 AG (ANx) | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

and 402. Fed. R. Evid. 401, 402 (describing the "test for relevant evidence" and the "general admissibility of relevant evidence"). Because evidence of flaws in the tool would not *unfairly* prejudice Quest, this evidence need not be excluded under Rule 403.

In any event, the sanctions awarded by the Court effectively moot this motion. Because Quest may not rely on data or expert opinion derived from the tool to prove overdeployment, evidence of the tool's purported deficiencies is unlikely to be relevant.

The Court DENIES this motion without leave for Quest to renew its objection at trial.

### 3.1.3   Quest Motion in Limine 3

Quest's third motion in limine seeks to exclude, under Rules 401, 402, and 403, all "references to defective Foglight Software." (Quest MIL 3 at 1.)

Quest argues, and the Court agrees, that evidence of defects in the Software has little, if any, bearing on whether DirecTV overdeployed Foglight. On the other hand, evidence of defects may be relevant to DirecTV's waiver and equitable estoppel defenses if it helps explain why Quest technicians were so familiar with DirecTV's software usage. Indeed, DirecTV argues that Quest knew the full extent of its deployment because Quest technicians were continually working with DirecTV to fix chronic defects in the Software.

But evidence regarding the *nature* and *extent* of the purported Software defects is largely irrelevant to DirecTV's equitable estoppel defense. And Quest may be unfairly prejudiced if the jury concludes that defects in the Software should excuse DirecTV from paying true-up fees for overdeployment.

The Court therefore DENIES this motion as to the *existence* of any defects in the Software, with leave for Quest to renew the objection at trial, and GRANTS the motion as to the *nature and extent* of these purported defects.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|----------|---------------------------|------|-------------------|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |


### 3.1.4   Quest Motion in Limine 4

In its fourth motion in limine, Quest seeks to exclude, under Rule 403, "evidence that DirecTV was entitled to deploy the Foglight Software in excess of its licenses for purposes of migrating from Windows NT to AIX without purchasing additional licenses." (Quest MIL 4 at 1.)

Quest argues that evidence regarding industry custom of waiving migration-related overdeployment charges should be excluded because the SLA requires payment for *all* overdeployment.  Quest further contends that admitting evidence of industry custom will confuse the issues and mislead the jury.

Quest supports this argument by citing Paragraph 16 of the SLA, which states that "[i]f [DirecTV's] use of the Software is found to be greater than contracted for, [DirecTV] will be invoiced for the additional licenses or license upgrades . . . ."  (Quest MIL 4 at 6, n.1 quoting SLA ¶ 16.)  But Quest fails to account for Attachment 1 to the SLA, which requires DirecTV to pay only for Software that is "installed *and* used."  (Declaration of Michael Katz supporting DirecTV's Opposition to Quest's MIL 4 ("Katz Decl.") Ex. B (emphasis added).)  DirecTV argues that although the Software may have been *installed* on Windows NT *and* AIX servers during the migration period, it was never *used* simultaneously on both.

To the extent that there is a dispute as to the meaning of the phrase "installed and used" in Attachment 1, evidence of industry custom is relevant.  Quest also fails to sufficiently show that such evidence will confuse or mislead the jury.

The Court DENIES this motion with leave for Quest to renew its objection at trial.

### 3.1.5   Quest Motion in Limine 5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|----------|---------------------------|------|-------------------|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

Quest's fifth motion in limine seeks "to exclude evidence set forth in the second rebuttal reports of [DirecTV's expert witnesses] Ronald Alepin and Ben Sheppard" under Federal Rule of Civil procedure 26(a)(2)(D). (Quest Motion in Limine 5 at 1.)

Rule 26(a)(2)(D) – erroneously cited by Quest as Rule 26(a)(2)(C) – allows parties to contradict or rebut evidence "on the same subject matter" identified by the opposing side's expert witness. Quest argues that DirecTV's rebuttal reports should be excluded because they contain evidence outside the scope of the report of Quest's expert, Ron S. Brill.

Brill filed an initial expert report in August 2011, which he amended twice after the Court granted DirecTV partial summary judgment in September 2011. Although Brill's *initial* report addressed the issues of "migration," "phase out," "term licenses," and "unused components," Quest claims that Brill's *amended* reports omitted them. Quest contends that DirecTV's rebuttals to Brill's *initial* report failed to address these four issues, while DirecTV's rebuttal reports to Brill's *amended* reports addressed these issues expansively. In short, Quest claims that "while Mr. Brill's *amended* expert reports are limited to very specific issues, [DirecTV's] *second* rebuttal report[s] attempt[] to go back into topics already addressed in his initial report." (Quest MIL 5 at 8 (emphasis added).)

DirecTV argues that this motion should be denied primarily because Brill revised his expert report twice after the discovery cutoff date and because DirecTV's expert opinions are within the scope of Brill's revised expert reports.

While it is true that "rebuttal evidence may not be offered merely to bolster the plaintiff's case-in-chief," *Brutsche v. City of Fed. Way*, 300 Fed. Appx. 552, 553 (9th Cir. 2002), it does not appear that DirecTV's rebuttal reports are being used for this improper purpose. Indeed all of DirecTV's rebuttal evidence is within the scope of *either* Brill's initial or amended expert reports. The Court will not permit Quest to substantially amend its expert reports, and then cry foul when DirecTV's revised rebuttals refer to evidence included only in the initial versions.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|----------|---------------------------|------|-------------------|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

The Court DENIES this motion without leave for Quest to renew its objection at trial.

### 3.1.6   Quest Motion in Limine 6

Quest's sixth motion in limine seeks to exclude, under Rules 401, 402, and 403, "evidence and arguments that DirecTV was entitled to deploy the Foglight Software in its testing and development environments without purchasing licenses." (Quest MIL 6 at 1.) Quest claims that this evidence is irrelevant because the SLA unambiguously requires licenses for *all* Software, regardless of the deployment environment.

DirecTV argues, and the Court agrees, that evidence of industry custom is relevant to address ambiguities in the SLA and Attachment 1.  (Katz Decl. Ex. B.)  As noted in Section 3.1.4, DirecTV claims that Attachment 1 requires licenses only for Software that is "installed *and* used."  (*Id.* (emphasis added).)  While conceding that the Software is *installed* on CPUs in testing and development environments, DirecTV argues these applications do not constitute "use" within the meaning of the SLA and Attachment 1. Evidence that DirecTV was entitled to deploy Foglight is therefore relevant.  Quest also fails to adequately show that introduction of such evidence will unfairly prejudice it.

The Court DENIES this motion with leave for Quest to renew its objection at trial.

### 3.1.7   Quest Motion in Limine 7

In its seventh motion in limine, Quest seeks to exclude, under California Civil Code § 1698, "testimony related to an oral enterprise agreement between the parties."  (Quest MIL 7 at 1-2.)

Paragraph 17(j) of the SLA states that "neither this Agreement nor any Quotation Form may be modified or amended except by a writing executed by a duly authorized representative of each party.  No other document or custom shall be deemed to amend or modify this Agreement."  (Declaration of William Chapman supporting Quest's MIL 7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

("Chapman Decl.") ¶ 2, Ex. A.)

Quest argues that this provision should preclude DirecTV from admitting evidence to show that "Quest granted DirecTV an oral enterprise agreement [for] an unlimited number of perpetual Foglight licenses . . . ." (Quest MIL 7 at 4.)  To support this argument, Quest cites California Civil Code § 1698 which states that "a contract in writing may be modified by an oral agreement supported by new consideration . . . *unless the contract otherwise expressly provides*."  (*Id.* at 5 citing Cal. Civ. Code § 1698(b)-(c) (emphasis added).)

DirecTV argues, and the Court agrees, that evidence of Quest's conduct and its oral representations is admissible because it is relevant to DirecTV's waiver and estoppel defenses.  Cal. Civ. Code § 1698(d) ("nothing in [§ 1698(a)-(c)] precludes . . . application of the rules of law concerning estoppel, oral novation and substitution of a new agreement, recision of a written contract by an oral agreement, wavier of a provision of a written contract, or oral independent collateral contract").  Significantly, Quest does not cite § 1698(d) in its motion, let alone describe how this subsection impacts the admissibility of its post-execution conduct and oral representations.

The Court DENIES this motion without leave for Quest to renew its objection at trial.

### 3.1.8   Quest Motion in Limine 8

In its eighth motion in limine, Quest seeks "to exclude improper evidence and arguments that DirecTV was entitled to deploy the Foglight Software in excess of its licenses for purposes of 'Phasing Out' CPUs without purchasing additional licenses." (Quest MIL 8 at 1.)

The term "phasing out" describes the process of decommissioning old servers during the migration process.  DirecTV claims that it "phased out" the Software on its Windows NT servers while the AIX servers were being made operational.  According to DirecTV, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

Software remained installed on the Windows NT servers in "hot standby" or "disaster recovery" modes just in case the new AIX servers crashed unexpectedly.  DirecTV claims that Software hibernating in these emergency modes are not "in use."

As explained in Sections 3.1.4 and 3.1.6, this evidence is relevant because Attachment 1 to the SLA requires DirecTV to pay only for Software that is "installed *and* used."  (Katz Decl. Ex. B.)

The Court DENIES this motion with leave for Quest to renew its objection at trial.

### 3.1.9   Quest Motion in Limine 9

In its ninth motion in limine, Quest seeks to exclude evidence that it waived any of its rights under the SLA.  (Quest MIL 9 at 1-2.)  Quest also requests that the Court exclude evidence showing that "Quest's conduct is inconsistent with Quest's claims."  (*Id.* at 2.)

Quest argues that evidence of waiver should be barred because Paragraph 17(j) of the SLA states that "neither this Agreement nor any Quotation Form may be modified or amended except by a writing executed by a duly authorized representative of each party.  No other document or custom shall be deemed to amend or modify this Agreement."  (Chapman Decl. ¶ 2, Ex. A.)  This argument fails for the reasons described in Section 3.1.7.  *See Lynch v. CIBY 2000, Inc.*, 1998 U.S. Dist. LEXIS 23497, at *19-20 (C.D. Cal. July 6, 1998) ("[E]ven if an agreement requires modifications be in writing, an oral or implied waiver of a condition may still be enforceable.  Waiver may be implied by the *conduct* of the parties.  Even a contractual provision that requires all modification be in writing may be waived by the parties' conduct."  (Emphasis added)).

The Court DENIES this motion without leave for Quest to renew its objection at trial.

### 3.1.10 Quest Motion in Limine 10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-1232 AG (ANx) | Date | February 10, 2012 |
|----------|----------------------|------|-------------------|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

In its tenth motion in limine, Quest seeks to exclude, under Rules 401, 402, and 403, evidence and arguments concerning "the 'Fair Market Value' or 'Reasonable Value' of Foglight Software and services." (Quest MIL 10 at 2.) Quest argues that evidence concerning the "fair market value" and "reasonable value" of its Software should be excluded "because the negotiated contract price is not ambiguous." (*Id.* at 6.) This argument is frivolous because – as Magistrate Judge Nakazato stated in his December Sanctions Order – the SLA does not identify a price for true-ups.

In that order, Magistrate Judge Nakazato explained that "while the [SLA] provides [that] 'additional licensing fees will be owed if usage exceeds the Base Licenses + 10% allowable increase,' [the SLA] does not define or specify what the amount of the 'additional licensing fees' would be in the event of an overdeployment." (December Sanctions Order at 3.) The order goes on to say that Plaintiff's expert, Ron S. Brill

> conceded what is obvious to all but Plaintiff – that Plaintiff's form licensing agreement does not identify a price for true-ups. Where, as here, the contract between the parties is silent or ambiguous with respect to the true-up price, the law implies a reasonable price. Cal. Com. Code § 2305 (open price means reasonable price). Under California law, it is well settled that market prices are relevant and admissible to establish a reasonable price. *See Bettancourt v. Gilroy Theatre Co.*, 120 Cal. App. 2d 364, 376 (1953) (market prices are a fair indication of reasonable prices). Accordingly, evidence of what Plaintiff actually charged other customers for true-up prices in overdeployment situations may be admissible.

(December Sanctions Order at 3.) The Court DENIES this motion without leave for Quest to renew its objection at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

### 3.1.11 Quest Motion in Limine 11

In its eleventh motion in limine, Quest moves "to exclude improper evidence and arguments that Quest was required to request a formal audit prior to seeking payment for overdeployment." (Quest MIL 11 at 1-2.) Paragraph 16 of the SLA states that:

> At Quest's request, but not more frequently than annually, [DirecTV] shall furnish Quest with a document signed by [DirecTV]'s authorized representative verifying [DirecTV's] usage of the Software. [DirecTV] will permit Quest to review [DirecTV's] deployment and use of the Software for compliance with the terms of the [SLA] at Quest's expense. . . . If [DirecTV's] use of the Software is found to be greater than contracted for, [DirecTV] will be invoiced for the additional licenses . . . .

(Quest MIL 11 at 8 n.1 citing SLA ¶ 16.)

DirecTV argues that "Quest was *absolutely required* to employ one of the methods the parties agreed upon, either an audit or a verified report from DirecTV, to determine whether an overdeployment occurred, before Quest was entitled to invoice DirecTV for additional license fees." (Opp'n to Quest MIL 11 at 3 (emphasis added).) But the language of Paragraph 16 does not *require* Quest to use one of these two specific methods. Rather, it requires *DirecTV* to permit an audit or submit a verified report upon Quest's request. Based on DirecTV's logic, it would not have to pay Quest for overdeployment that it voluntarily disclosed to Quest or that Quest discovered through the admission of a whistleblower. The argument that Quest was *required* to request a formal audit before seeking true-up fees has the potential to confuse the jury, and will certainly distract the jury from the core issue – whether DirecTV overdeployed the Software.

The Court GRANTS this motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

### 3.1.12 Quest Motion in Limine 12

In its final motion in limine, Quest requests that "evidence relating to Quest's knowledge of DirecTV's overdeployment not be admitted for the purpose of DirecTV's estoppel affirmative defense." (*Id.* at 8.) Quest argues that parol evidence should be excluded due to the anti-modification language of Paragraph 17(j) of the SLA. (Quest MIL 12 at 2, 5.) Quest further argues that the "Court has already ruled that DirecTV's estoppel evidence on Quest's overdeployment claim . . . 'does not come close to satisfying all four equitable estoppel factors on this issue.'" (*Id.* at 5.)

Although Paragraph 17(j) states that the SLA may not be modified except by written agreement of the parties, Quest's oral representations and conduct are still relevant to DirecTV's estoppel defense. As noted in Section 3.1.7, California Civil Code § 1698(d) expressly provides that laws concerning estoppel apply even when contracts contain anti-modification provisions. Cal. Civ. Code § 1698(d) ("nothing in [§ 1698(a)-(c)] precludes . . . application of the rules of law concerning estoppel . . . "). Nor should evidence supporting DirecTV's equitable estoppel defense be excluded from the trial simply because DirecTV failed to meet its heavy burden on summary judgment.

The Court DENIES this motion without leave for Quest to renew its objection at trial.

### 3.2    DirecTV's Motions in Limine

The Court GRANTS DirecTV's fourth motion in limine, GRANTS in part and DENIES in part DirecTV's second motion in limine, and DENIES DirecTV's first and third motions in limine.

### 3.2.1   DirecTV Motion in Limine 1

DirecTV's first motion in limine is the mirror image of Quest's eleventh motion in limine, and is DENIED for the same reasons that Quest's eleventh in limine motion is granted. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 09-1232 AG (ANx) | Date | February 10, 2012 |
|----------|----------------------|------|-------------------|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

this motion DirecTV seeks "to exclude evidence and testimony related to Quest's June 2007 Data . . . *because* the data was not obtained in the manner the parties agreed to under Paragraph 16 [of the SLA]."  (DirecTV MIL 1 at 2, 5 (emphasis added).)

As explained in Section 3.1.11, Paragraph 16 *permits* Quest to measure deployment by requesting a verified report from DirecTV of its Foglight usage, or by conducting an on-site audit.  It does not *limit* the methods Quest may use to measure deployment.

But the Court's denial of this motion does not mean that Quest may introduce evidence of overdeployment based on the tool.  Quest is still precluded from introducing such evidence because of its *discovery violations*, which are described more fully in Sections 1 and 2.

### 3.2.2  DirecTV Motion in Limine 2

In its second motion in limine, DirecTV seeks an order "precluding Quest from offering evidence, argument, or testimony from its expert, Ron S. Brill, concerning Quest's damages."  (DirecTV MIL 2 at 1.)

DirecTV argues that Brill's damage calculations are improper because they are based on Foglight's full "list price."  The Court agrees.  In his deposition, Brill concedes that Foglight's full list price includes a maintenance fee component.  (Declaration of Thomas, Ex. G (Brill Dep., 78:10-79:15.)  In its September 26, 2011 Order, the Court ruled that Quest may not retroactively charge maintenance fees for overdeployed Foglight.  Thus, Quest is barred from introducing Brill's testimony that DirecTV should be charged the full list price for its purported overdeployment.

The Court DENIES DirecTV's motion as to Brill's remaining opinions, provided that such opinions are not barred by the issue preclusive sanctions the Court imposes.

### 3.2.3  DirecTV Motion in Limine 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

In its third motion in limine, DirecTV seeks "to exclude four undisclosed witnesses from testifying at trial." (DirecTV MIL 3 at 1.) DirecTV specifically moves to exclude Ken Barrette, Kim Kinnison, Lowri Taylor, and John Selles from testifying at trial because Quest allegedly failed to disclose these witnesses as required by Rule 26. Fed. R. Civ. P. 26(a).

Quest plans to call Barrette, Selles, and Kinnison to provide foundational support for the information underlying Brill's expert testimony. Permitting these three witnesses to testify will not unfairly prejudice DirecTV provided that the testimony serves only to "authenticat[e] the documents and data provided to Mr. Brill and provid[e] foundational support for the facts relied on by Mr. Brill in forming his expert opinions." (Opp'n to DirecTV MIL 3 at 3; Declaration of William Chapman supporting Quest's Opposition ¶ 3.) DirecTV's motion is DENIED as to Barrette, Selles, and Kinnison, with leave for DirecTV to renew its objection if the testimony of these witnesses goes beyond authenticating documents and providing foundational support for Brill's opinions.

DirecTV devotes most of this motion to Taylor, arguing that it will be prejudiced if Taylor is allowed to testify about the reasonable market value of Quest's software. Although Quest did not designate Taylor as a witness until it submited its Rule 30(b)(6) disclosures, DirecTV declined opportunities to depose Taylor on multiple occasions. DirecTV's failure to pursue Taylor's deposition indicates that it will not be unfairly prejudiced if she is permitted to testify. The motion is DENIED as to Taylor with leave for DirecTV to renew its objection at trial.

### 3.2.4   Quest Motion in Limine 4

In its fourth motion in limine, DirecTV seeks "to exclude the June 2007 Data and the opinion testimony of [Quest's expert] Ron S. Brill relying therefrom with regard to DirecTV's Foglight usage." (DirecTV MIL 4 at 1-2.) DirecTV claims that Brill's opinion that DirecTV overdeployed Foglight is unreliable because it is based solely on data derived from Quest's counting tool. The Court GRANTS this motion because it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA


**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 09-1232 AG (ANx)** | Date | February 10, 2012 |
|---|---|---|---|
| Title | QUEST SOFTWARE, INC. v. DIRECTV OPERATIONS, LLC | | |

coextensive with the issue preclusive sanctions imposed on Quest.

## <u>DISPOSITION</u>

The Court GRANTS DirecTV's request for an "[o]rder barring Quest and its experts from relying directly or indirectly on the June 2007 data from the Quest counting tool to prove the extent of DirecTV's use of Foglight or the resulting damages." (Motion at 6:15-18.) The Court also GRANTS DirecTV's request for an "[o]rder barring Quest from arguing that the full Foglight 'list price' or the 'historical price paid by DirecTV' are appropriate units of damages for true-up fees." (*Id.* at 6:20-22.) DirecTV's remaining requests for sanctions are DENIED.

The Court GRANTS Quest's eleventh motion in limine and GRANTS in part and DENIES in part Quest's third motion in limine. The Court GRANTS DirecTV's fourth motion in limine and GRANTS in part and DENIES in part DirecTV's second motion in limine. The parties remaining in limine motions are DENIED in full.

The Court ORDERS a hearing on February 27, 2012 at 9:00 a.m. to schedule the pretrial conference and trial.


|  | : | 0 |
|---|---|---|
| Initials of Preparer | dr | |